RULON W. BAKER et al., complainants,

*v.*

BENJAMIN F. SHIMP et al., defendants.

[Decided July 9th, 1930.]

*Mr. Francis A. Stanger, Jr.,* for the complainants.

*Mr. William A. W. Grier,* for the defendant Benjamin F. Shimp, administrator.

INGERSOLL, V. C.

This is a bill to foreclose three certain mortgages, one made by Benjamin F. Shimp and Florence D. Shimp, his wife, to the City National Bank and Trust Company of Salem, New Jersey, to secure the payment of a certain promissory note in the sum of $11,750, and by said bank assigned to the complainants. The second made by Raymond L. Mc-Gargle and wife to Benjamin F. Shimp in the sum of $1,000, which mortgage was duly assigned to the said City National Bank and Trust Company of Salem, New Jersey, as security

for the payment of the said promissory note above referred to. This mortgage was later assigned to the complainants, and no defense is made thereto. The third is to foreclose a chattel mortgage made by Benjamin F. Shimp to the City National Bank and Trust Company of Salem, New Jersey, as security for the payment of said note referred to, which said chattel mortgage was duly assigned to the complainants.

The facts of this case, as developed, are that Benjamin F. Shimp and Frank H. G. Shimp, his father, individually and as partners, trading as F. H. G. Shimp & Son, made a certain promissory note dated March 15th, 1926, to the order of the City National Bank and Trust Company of Salem, New Jersey, for the sum of $11,750, which note was endorsed by the complainants and discounted at the said bank, and the proceeds thereof went to the benefit of the said Benjamin F. and Frank H. G. Shimp and the partnership of F. H. G. Shimp & Son.

On February 5th, 1928, Frank H. G. Shimp died intestate, survived by said Benjamin F. Shimp as his only heir-at-law. On March 3d, 1928, upon the demand of the said City National Bank and Trust Company of Salem, New Jersey, the mortgage first above referred to was executed and delivered by the said Benjamin F. Shimp and Florence D. Shimp, his wife, on the express condition that such conveyance should be void if the said Benjamin F. Shimp should pay or cause to be paid unto the City National Bank and Trust Company of Salem, New Jersey, on demand, the principal and interest of the promissory note heretofore mentioned, together with attorney fees, commissions, protests, or of any renewal or renewals given thereafter.

This mortgage covered a great many tracts of land. On the same day, that is, March 3d, 1928, Benjamin F. Shimp, by written assignment, assigned the said bond and mortgage secondly referred to as collateral security also for said note or any renewals thereof, and on the same day said Shimp executed the chattel mortgage above referred to also as security for the same note.

On the 13th day of June, 1928, Benjamin F. Shimp was

appointed administrator of the estate of his father, Frank H. G. Shimp, and duly qualified as such. On October 15th, 1928, payment of said note was duly demanded by said City National Bank and Trust Company of Salem, New Jersey, and was duly protested for non-payment, and the complainants, on October 22d, 1928, paid to the City National Bank and Trust Company of Salem, New Jersey, the sum of $11,750, together with $421.20 interest then due, and on the date of the payment of said note, said assignment of mortgages were duly made by the City National Bank and Trust Company to the complainants. On August 6th, 1929, judgment was entered in the Salem county court of common pleas at the suit of complainants as plaintiffs against Benjamin F. Shimp, for the sum of $12,806.76. The complainants claimed the sum of $12,171.20, with interest from October 22d, 1928, to be due.

At the time of the execution of the mortgage first above referred to, title to the lands and premises therein described was an undivided one-half interest thereof in the said Benjamin F. Shimp, and the remaining one-half interest thereof in the estate of Frank H. G. Shimp, deceased.

After the appointment of the defendant Benjamin F. Shimp as administrator, a rule to bar creditors was entered on the 13th day of December, 1928. On the 11th day of April, 1929, an order was made directing the administrator to sell the undivided one-half interest of the decedent's in the lands set forth in the complainants' mortgage for the payment of debts of the deceased. This was more than fourteen months after the death of the decedent, and no sale has yet been made or attempted to be made.

There can be no question but that although no consideration passed as between Shimp and the bank, the undivided one-half interest held by him at the time of his father's death was subject to its lien. The question arises, however, has he, in his dual capacity of administrator of his father's estate, any defense to this action? Chapter 322 of the laws of 1920, supplement to an act entiled "An act respecting the orphans court, &c.," laws of 1920, page 577, reads:

"The lands, tenements, hereditaments and real estate of any person who shall die seized thereof or entitled to the same, as well as any share or shares, or part or parts of a share of property of undivided rights or warrant to locate lands in this state, shall not be liable for the payment of his or her debts beyond one year after his or her decease, unless such decedent by his or her last will and testament shall specifically state or provide therein, in express language, that any such debt or debts shall be and remain a lien thereon for a longer term than one year after his or her decease; and any statement in any last will and testament directing the payment of the just debts of any such decedent shall not hereafter be construed as making any such debt a charge or lien upon any such lands, tenements, hereditaments or real estate beyond the period of one year from the date of the death of such decedent, unless such last will and testament shall otherwise specifically state, in express language, that any such debt or debts is to be and remain a lien or charge thereon beyond said period of one year; *provided, however,* that the heirs and devisees of any such decedent shall be and remain liable for any such debts to the same extent as heretofore under the act entitled 'An act for the relief of creditors against heirs and devisees,' Revision of New Jersey, Compiled Statutes, Vol. 2, page 2739; *and provided further,* that this act shall not affect in any way the right of inchoate right of dower or the right of curtesy."

The act therein referred to reads:

"That all and every creditor or creditors, whether by simple contract or specialty, and whether the heirs are mentioned therein or not, shall and may, by virtue of this act, have and maintain his, her and their action and actions, against the heir and heirs-at-law of any debtor who hath already died, or shall hereafter die intestate, seized of any messuages, lands, tenements or hereditaments, and against the heir and heirs-at-law, and devisee and devisees of such debtor, in case such debtor made any last will and testament; and such heir and heirs, devisee and devisees shall be liable and chargeable for a false plea by him, her or them pleaded in the same manner as any heir should have been for any false plea, by him pleaded, in any action of debt upon specialty, or for not confessing the lands or tenements to him descended; and moreover, all such creditors shall be preferred as in actions against executors and administrators."

Vice-Chancellor Pitney, in *McMahon* v. *Schoonmaker, 51 N. J. Eq. 95,* held, "that a *bona fide* mortgage, given by a devisee upon lands devised to him, and executed before suit brought against such devisee upon the debt of the testator, is an alienation *pro tanto* of the lands, and will take precedence over a judgment recovered against the devisee upon the debt of the testator."

A decree will be advised in favor of the complainant, in so far as the first count is concerned. The sale, of course, as always, can only be of such right and title as the mortgagors had in the premises at the time of making the mortgage. The bill must be dismissed in so far as the third cause of action is concerned. There was no title in the mortgagor at the time he made the chattel morgage.